Michael G. Bongiorno (*pro hac vice*)
David S. Lesser (*pro hac vice*)
Jamie S. Dycus (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(t) 212-230-8800
(f) 212-230-8888
michael.bongiorno@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendants*

Susan M. Leming
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, NJ 08108
(t) 856-854-8900
(f) 856-858-4967
sleming@brownconnery.com

*Attorney for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

HENRY CHURCH VI,
Individually and on Behalf of All Others
Similarly Situated,

                    Plaintiff,


                    v.


GLENCORE PLC, IVAN
GLASENBERG, and STEVEN
KALMIN,

                    Defendants.

Case No. 2:18-cv-11477-SDW-CLW

**REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO
DISMISS THE AMENDED
COMPLAINT**

**Motion Day: June 1, 2020**

**ORAL ARGUMENT
REQUESTED**

# TABLE OF CONTENTS

I.  DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION ..2

    A.  Glencore Is Not Subject to General Jurisdiction...................................3

    B.  Glencore Is Not Subject to Specific Jurisdiction .................................4

    C.  The Individual Defendants Are Not Subject to Personal Jurisdiction ..6

    D.  Plaintiffs Have Failed to Show that Exercising Personal Jurisdiction over Defendants Would Be Reasonable................................................7

II.  THE CLAIMS ARE IMPERMISSIBLY EXTRATERRITORIAL...............8

III.  THE OPPOSITION FAILS TO ESTABLISH THAT DEFENDANTS MADE ANY ACTIONABLE MISSTATEMENT OR OMISSION .............9

    A.  The Risk-Warning Statements Are Not Actionable...........................10

    B.  The Ethics and Compliance Statements Are Not Actionable .............14

    C.  The Statements Concerning Payments to Gertler Are Inactionable ...17

IV.  THE OPPOSITION FAILS TO ESTABLISH THAT DEFENDANTS ACTED WITH SCIENTER .........................................................................20

    A.  The Opposition Does Not Establish the Individual Defendants' Scienter ..............................................................................................21

        1.  The Opposition Does Not Establish Individualized Motive.....21

        2.  The Opposition Does Not Establish Individual Scienter Through a "Core Operations" Inference .................................22

        3.  The Opposition's Other Circumstantial Allegations Do Not Establish the Individual Defendants' Scienter.........................23

    B.  The Opposition Does Not Establish Glencore's Corporate Scienter ..25

V.  THE COURT SHOULD DISMISS THE CASE IN FAVOR OF SWITZERLAND ON FORUM NON CONVENIENS GROUNDS............26

    A.  Plaintiffs' Choice of Forum Warrants Little Deference......................26

    B.  Switzerland Is an Adequate Alternative Forum .................................27

    C.  Private and Public Factors Compel Dismissal to Switzerland............28

VI.  THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE........30

CONCLUSION...................................................................................................30

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) .......................................................22

*Allstate Life Insurance Co. v. Linter Group Ltd.*,
   994 F.2d 996 (2d Cir. 1993) ...................................................................30

*Anschutz Corp. v. Merrill Lynch & Co.*,
   785 F. Supp. 2d 799 (N.D. Cal. 2011)......................................................22

*Archut v. Ross University School of Veterinary Medicine*,
   2013 WL 5913675 (D.N.J. Oct. 31, 2013) ................................................28

*Asahi Metal Industry Co. v. Superior Court of California*,
   480 U.S. 102 (1987)..................................................................................7

*Borden, Inc. v. Meiji Milk Products Co.*,
   919 F.2d 822 (2d Cir. 1990) ...................................................................28

*BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*,
   229 F.3d 254 (3d Cir. 2000) ......................................................................7

*California Public Employees' Retirement System v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) ....................................................................25

*Carteret Savings Bank, FA v. Shushan*,
   954 F.2d 141 (3d Cir. 1992) ......................................................................5

*City of Cambridge Retirement System v. Altisource Asset Management Corp*,
   908 F.3d 872 (3d Cir. 2018) ....................................................................30

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
   856 F.3d 605 (9th Cir. 2017) ...................................................................24

*City of Edinburgh Council v. Pfizer, Inc.*,
   754 F.3d 159 (3d Cir. 2014) ....................................................................19

*Crago v. Charles Schwab & Co.*,
2017 WL 6550507 (N.D. Cal. Dec. 5, 2017).........................................................22

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...........................................................................................3

*Das v. Rio Tinto PLC*,
332 F. Supp. 3d 786 (S.D.N.Y. 2018) ...........................................................11, 15, 25

*Employees Retirement System of Providence v. Embraer S.A.*,
2018 WL 1725574 (S.D.N.Y. Mar. 30, 2018).....................................................15

*Galati v. Commerce Bancorp, Inc.*,
2005 WL 3797764 (D.N.J. Nov. 7, 2005) .........................................................13

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004) ..............................................................................24

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)............................................................................................5

*Horowitz v. AT&T Inc.*,
2018 WL 1942525 (D.N.J. Apr. 25, 2018) .........................................................3

*Howard v. Arconic Inc.*,
395 F. Supp. 3d 516 (W.D. Pa. 2019)................................................................13

*In re Adams Golf, Inc. Securities Litigation*,
381 F.3d 267 (3d Cir. 2004) ..............................................................................20

*In re Alcon Shareholder Litigation*,
719 F. Supp. 2d 263 (S.D.N.Y. 2010) .....................................................8, 28, 29

*In re Aluminum Warehousing Antitrust Litigation*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015) ..............................................................3, 4

*In re AXIS Capital Holdings Ltd. Securities Litigation*,
456 F. Supp. 2d 576 (S.D.N.Y. 2006) ...............................................................12

*In re Banco Bradesco S.A. Securities Litigation*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017) ...............................................................15

*In re Bio-Technology General Corp. Securities Litigation*,
   380 F. Supp. 2d 574 (D.N.J. 2005) ......................................................................24

*In re Braskem S.A. Securities Litigation*,
   246 F. Supp. 3d 731 (S.D.N.Y. 2017) ...........................................................15, 16

*In re Bristol-Myers Squibb Securities Litigation*,
   228 F.R.D. 221 (D.N.J. 2005)............................................................................30

*In re Cendant Corp. Securities Litigation*,
   76 F. Supp. 2d 539 (D.N.J. 1999) .......................................................................21

*In re Eletrobras Securities Litigation*,
   245 F. Supp. 3d 450 (S.D.N.Y. 2017) ...............................................................15

*In re Faro Technologies Securities Litigation*,
   534 F. Supp. 2d 1248 (M.D. Fla. 2007)..............................................................12

*In re Galena Biopharma, Inc. Securities Litigation*,
   336 F. Supp. 3d 378 (D.N.J. 2018) .....................................................................14

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
   2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ......................................................6

*In re Merck & Co. Securities, Derivative & Erisa Litigation*,
   2012 WL 3779309 (D.N.J. Aug. 29, 2012) ........................................................20

*In re Merck & Co. Securities Litigation*,
   432 F.3d 261 (3d Cir. 2005) ...............................................................................10

*In re NAHC, Inc. Securities Litigation*,
   306 F.3d 1314 (3d Cir. 2002) .............................................................................30

*In re Navient Corp. Securities Litigation*,
   2019 WL 7288881 (D.N.J. Dec. 30, 2019).........................................................23

*In re Platinum & Palladium Antitrust Litigation*,
   2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017)......................................................6

*In re PTC Therapeutics, Inc. Securities Litigation*,
   2017 WL 3705801 (D.N.J. Aug. 28, 2017) ...................................................13, 23

*In re Toronto-Dominion Bank Securities Litigation*,
2018 WL 6381882 (D.N.J. Dec. 6, 2018) ....................................................15, 23

*In re WorldCom, Inc. Securities Litigation*,
294 F. Supp. 2d 392 (S.D.N.Y. 2003) ..............................................................22

*Institutional Investors Group v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ............................................................................21

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984)............................................................................................7

*Lynch v. Hilton Worldwide, Inc.*,
2011 WL 5240730 (D.N.J. Oct. 31, 2011) .......................................................29

*Martin v. GNC Holdings, Inc.*,
2017 WL 3974002 (W.D. Pa. Sept. 8, 2017).....................................................16

*Martin v. GNC Holdings, Inc.*,
757 F. App'x 151 (3d Cir. 2018) ........................................................16, 22, 23

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011)............................................................................................17

*Menaldi v. Och-Ziff Capital Managment Group LLC*,
164 F. Supp. 3d 568 (S.D.N.Y. 2016) ..............................................................13

*Meyer v. JinkoSolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014) .............................................................................17

*Morrison v. National Australia Bank Ltd.*,
561 U.S. 247 (2010)......................................................................................8, 30

*Nicholas v. Saul Stone & Co. LLC*,
224 F.3d 179 (3d Cir. 2000) ...............................................................................7

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007) ...............................................................................8

*OFI Asset Management v. Cooper Tire & Rubber*,
834 F.3d 481 (3d Cir. 2016) .............................................................................10

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015) ..................................................................... 18-19

*Otsuka Pharmaceutical Co. v. Mylan Inc.*,
    106 F. Supp. 3d 456 (D.N.J. 2015) ........................................................3

*Parkcentral Global Hub Ltd. v. Porsche Automotive Holdings SE*,
    763 F.3d 198 (2d Cir. 2014) ...........................................................8, 9

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ..........................................................................27

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
    937 F.3d 94 (2d Cir. 2019) ..................................................................9

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013) .............................................................20

*Roofer's Pension Fund v. Papa*,
    2018 WL 3601229 (D.N.J. July 27, 2018) .......................................12

*Roth v. AON Corp.*,
    2008 WL 656069 (N.D. Ill. Mar. 7, 2008) ........................................22

*Schiro v. Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019) ......................................... 14-15

*S.E.C. v. Jackson*,
    908 F. Supp. 2d 834 (S.D. Tex. 2012) ..............................................12

*S.E.C. v. Straub*,
    921 F. Supp. 2d 244 (S.D.N.Y. 2013) ................................................6

*S.E.C. v. Unifund SAL*,
    910 F.2d 1028 (2d Cir. 1990) .............................................................6

*Seltzer v. I.C. Optics, Ltd.*,
    339 F. Supp. 2d 601 (D.N.J. 2004) .............................................3, 7, 8

*Simon v. Republic of Hungary*,
    911 F.3d 1172 (D.C. Cir. 2018) ........................................................29

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019) ...............................................................17

*Skycliff IT, LLC v. N.S. Infotech Ltd.*,
    2018 WL 2332219 (D.N.J. May 23, 2018)........................................27

*Stichting Pensioenfonds ABP v. Merck & Co.*,
    2012 WL 3235783 (D.N.J. Aug. 1, 2012) .........................................16

*Suhail v. Trans-Americainvest (St. Kitts), Ltd.*,
    2015 WL 4598809 (D.N.J. July 29, 2015) ........................................28

*Technology Development Co. v. Onischenko*,
    536 F. Supp. 2d 511 (D.N.J. 2007)....................................................27

*Thomas v. Shiloh Industries, Inc.*,
    2017 WL 1102664 (S.D.N.Y. Mar. 23, 2017)...................................22

*Veal v. LendingClub Corp.*,
    2019 WL 5698072 (N.D. Cal. Nov. 4, 2019) ....................................16

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991)........................................................................19

*Walden v. Fiore*,
    571 U.S. 277 (2014)............................................................................5

*Williams v. Globus Medical, Inc.*,
    869 F.3d 235 (3d Cir. 2017) .......................................................13, 14

*Windt v. Qwest Communications Int'l, Inc.*,
    529 F.3d 183 (3d Cir. 2008) .......................................................27, 29

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007) .............................................................20

*Zola v. TD Ameritrade, Inc.*,
    172 F. Supp. 3d 1055 (D. Neb. 2016)................................................22

**Statutes**

15 U.S.C. § 78dd-1(a)(3) .........................................................................11

Plaintiffs' opposition brief ("Opp.") fails to rebut the numerous independently sufficient arguments for dismissal set forth in Defendants' opening brief ("Br.").  The Complaint should be dismissed.

*First*, the Opposition confirms that the Court lacks personal jurisdiction over Defendants.  The Complaint fails to plead that Defendants, all of whom are domiciled overseas, engaged in any suit-related conduct in the United States.  *See* Br. 8-16.  Nothing in the Opposition suggests otherwise.

*Second*, the Opposition confirms that this dispute is overwhelmingly foreign, rendering Plaintiffs' Section 10(b) claims impermissibly extraterritorial.  *See* Br. 17-21.  Plaintiffs fail even to address the fact that Defendants did not authorize or participate in offering the unsponsored ADRs and F shares at issue.

*Third*, the Opposition fails to show that any challenged statement is materially false or misleading.  *See* Br. 21-37.  Plaintiffs merely point to government investigations and business activities that Glencore amply disclosed, as well as generic ethics and compliance statements that are classic puffery.

*Fourth*, the Opposition fails to establish that Plaintiffs have pleaded the required "strong inference" of scienter.  *See* Br. 37-51.  Plaintiffs attempt to recast the Complaint's nonspecific allegations to implicate the Individual Defendants but offer no support for an inference that either of them acted with scienter.  Plaintiffs' attempts to impute scienter to Glencore itself are similarly bereft of support.

*Fifth*, the Opposition confirms that any claims that would otherwise survive should be litigated in Switzerland and thus should be dismissed on *forum non conveniens* grounds.  Plaintiffs brought suit against Swiss-domiciled Defendants based on statements made primarily in Switzerland about the activities of a Swiss company.  Switzerland is the more appropriate forum.

For the foregoing reasons, and all those stated in Defendants' opening brief, the Court should dismiss the Complaint with prejudice.

## I.   DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION

Plaintiffs fail to plead a basis for personal jurisdiction over Defendants, all of whom are located overseas, and none of whom is alleged to have engaged in any suit-related conduct in the United States.  Plaintiffs' argument concerning the Exchange Act's provision for nationwide service of process, *see* Opp. 36-37, is a red herring.  Plaintiffs have not pleaded any facts capable of supporting personal jurisdiction over an Exchange Act claim in *any* U.S. jurisdiction.  Plaintiffs do not allege that Defendants listed any securities on a domestic exchange; that any Defendant had the requisite contacts with the United States; that any of the alleged bribery or other misconduct occurred anywhere in the United States; or that any of the alleged misstatements was made in the United States or targeted U.S. investors. Nothing in the Opposition cures these fatal deficiencies.

2

## A.    Glencore Is Not Subject to General Jurisdiction

Plaintiffs make a half-hearted attempt to demonstrate general jurisdiction. Under *Daimler AG v. Bauman*, 571 U.S. 117 (2014), ordinarily a corporation is not subject to general jurisdiction anywhere other than its place of incorporation or its principal place of business.  Plaintiffs do not and cannot contend that Glencore is incorporated in the United States or has its principal place of business here.  *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 230-32 (S.D.N.Y. 2015) ("unreasonable" to assert jurisdiction over Glencore plc, which "lack[ed] even minimal contacts" with the United States).  Instead, Plaintiffs point to *other* entities that supposedly maintain U.S. locations.  *See* Opp. 43-44.  But the presence of in-forum affiliates does not support general jurisdiction.  *See Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 466 (D.N.J. 2015).  To the extent Plaintiffs seek to support general jurisdiction under an "alter ego" theory, they must allege "details of the unique relationship between the parent corporation and its subsidiary."  *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *8 (D.N.J. Apr. 25, 2018).  The Complaint, however, contains no facts suggesting that the forum contacts of any U.S. affiliate can be imputed to Glencore.  *See Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004).  Finally, Plaintiffs cannot establish general jurisdiction based on the use of collective terms (*e.g.*, "we") on the Glencore website, the fact that Glencore's annual reports cover affiliated

3

companies, or internet search results purportedly reflecting employees and job openings at unspecified domestic affiliates. *See* Opp. 43-44; *cf.* Burton Decl. ¶¶ 8-9 (Glencore plc has no U.S. officers or employees). None of those facts is pleaded in the Complaint and none comes close to establishing that Glencore is "at home" in the United States. Br. 11-12; *see Aluminum*, 90 F. Supp. 3d at 231.

### B.   Glencore Is Not Subject to Specific Jurisdiction

The Opposition does not cure Plaintiffs' failure to allege that Glencore engaged in any suit-related conduct in, or targeted at, the United States, as specific jurisdiction requires. *See Aluminum*, 90 F. Supp. 3d at 230-32. Plaintiffs have not alleged that any challenged statements or alleged misconduct occurred here. They do not respond to the argument that Glencore did not authorize or issue their unsponsored ADRs and F shares. *See* Br. 13-14. And they have abandoned any effort to ground jurisdiction on health benefits provided to U.S.-based former employees or financial statements reporting results in U.S. dollars. *See id.* at 14.

Instead, Plaintiffs try to connect the alleged misstatements to the United States based on toll-free dial-in numbers used for earnings calls. *See* Opp. 39. Plaintiffs' assertion that Glencore "maintained a telephone number" in the United States is deeply misleading. Plaintiffs' own exhibits show that earnings calls were conducted using conference call dial-ins with local toll-free access for investors around the world—hardly reflecting an attempt to target the United States in

particular.  Nor do Plaintiffs offer any authority suggesting that such dial-in numbers are sufficient to confer specific jurisdiction over a foreign defendant, or allege that the Individual Defendants participated in earnings calls from the United States.  *See* Glasenberg Decl. ¶ 13; Kalmin Decl. ¶ 13.  Plaintiffs' reliance on *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992), is misplaced. That case, holding that jurisdiction may lie "over a non-resident defendant who, while present in the forum state, makes a deliberate misrepresentation," *id.* at 146-47, only illustrates the insufficiency of Plaintiffs' own much thinner allegations.

Plaintiffs also make a desultory attempt to establish personal jurisdiction over Glencore based on their allegation that it was the subject of reporting by U.S. analysts.  *See* Opp. 30.  The attempt runs headlong into the well-established principle that personal jurisdiction must be based on a defendant's *own* contacts with the forum.  *See Walden v. Fiore*, 571 U.S. 277, 285-86 (2014) (personal jurisdiction must be based upon "contacts that the defendant himself creates with the forum"); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (rejecting "unilateral activity of another party" as basis for jurisdiction).

Finally, Plaintiffs argue that Glencore is subject to personal jurisdiction because the Complaint alleges that it violated federal laws and was the subject of investigations by the Department of Justice ("DOJ") and the Commodity Futures Trading Commission ("CFTC").  *See* Opp. 40.  Neither remotely suffices.  A

plaintiff cannot subject a defendant to jurisdiction through the simple expedient of alleging a violation of domestic law.  And allegations of regulatory investigations are irrelevant to the personal jurisdiction analysis.  That a federal agency opens an investigation does not establish that it has jurisdiction over the investigated party.  Even assuming DOJ and CFTC enforcement jurisdiction exists, such jurisdiction is not coextensive with a federal court's jurisdiction over a private plaintiff's claims.  Federal courts commonly dismiss foreign defendants from private lawsuits for lack of personal jurisdiction even though the same defendants are the subject of DOJ and CFTC investigations.  *See, e.g.*, *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *49 (S.D.N.Y. Mar. 28, 2017); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7378980, at *1 (S.D.N.Y. Dec. 20, 2016).[1]

## C. The Individual Defendants Are Not Subject to Personal Jurisdiction

The Opposition provides no basis for the Court to exercise jurisdiction over the Individual Defendants.  Plaintiffs acknowledge that an individual's domicile is "the paradigm forum for the exercise of general jurisdiction," Opp. 43, and do not dispute that neither Individual Defendant has a U.S. domicile.  Concerning specific

---

[1]     The cases on which Plaintiffs rely are distinguishable.  *See, e.g.*, *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990) (jurisdiction existed where claims involved securities of "United States company traded exclusively on a United States exchange"); *S.E.C. v. Straub*, 921 F. Supp. 2d 244, 256 (S.D.N.Y. 2013) (same, where claims involved securities "listed on the NYSE").

jurisdiction, Plaintiffs do not even try to point to any allegation that either

Individual Defendant engaged in any suit-related conduct in the United States.  *See*

Br. 15-16.  Plaintiffs instead argue that the Individual Defendants should be subject

to specific jurisdiction because, Plaintiffs say, Glencore is subject to jurisdiction

and its executives purportedly were "entrenched" in alleged "fraudulent behavior."

Opp. 41.  That argument fails first because Plaintiffs have not alleged a basis to

exercise jurisdiction over Glencore.  Second, jurisdiction over Glencore would not

automatically subject its executives to jurisdiction.  *See Keeton v. Hustler*

*Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Nicholas v. Saul Stone & Co. LLC*,

224 F.3d 179, 184 (3d Cir. 2000).  Plaintiffs' cases on this point are inapposite; all

involve conduct within the United States or companies listed on a U.S. exchange.

### D. Plaintiffs Have Failed to Show that Exercising Personal Jurisdiction over Defendants Would Be Reasonable

Finally, exercising jurisdiction over Defendants would not comport with

"fair play and substantial justice."  *BP Chem. Ltd. v. Formosa Chem. & Fibre*

*Corp.*, 229 F.3d 254, 260 (3d Cir. 2000).  "[T]he Supreme Court has warned that

'[g]reat care and reserve should be exercised when extending our notions of

personal jurisdiction into the international field.'"  *Seltzer*, 339 F. Supp. 2d at 613

(quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 115 (1987)).

Contrary to Plaintiffs' assertion, forcing a foreign corporation without minimum

contacts to litigate here, even in the age of "e-discovery," Opp. 45, would impose a

"substantial burden," *Seltzer*, 339 F. Supp. 2d at 613, especially considering that most relevant evidence is located in Switzerland and could not be produced here without navigating complex foreign-law procedures. *See In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 276 (S.D.N.Y. 2010). Plaintiffs also argue that exercising personal jurisdiction over Defendants would be reasonable because *Plaintiffs* would be burdened if they had to litigate in Switzerland. *See* Opp. 46. Plaintiffs have the due process inquiry exactly backward. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 324 (3d Cir. 2007). Subjecting Defendants to personal jurisdiction here would violate due process.

## II.     THE CLAIMS ARE IMPERMISSIBLY EXTRATERRITORIAL

The Opposition attempts to show that Plaintiffs have pleaded a domestic transaction, as required by *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), by arguing that irrevocable liability attached in the United States. *See* Opp. 48-50. But nothing in the Opposition supplies the "detailed facts" required to plead a domestic transaction. *See* Br. 18-19. Nor is a domestic transaction alone sufficient to satisfy *Morrison*, as explained in *Parkcentral Global Hub Ltd. v. Porsche Automotive Holdings SE*, 763 F.3d 198, 215 (2d Cir. 2014). Where claims arising from a "domestic" transaction are overwhelmingly foreign in other respects, application of the Exchange Act is impermissibly extraterritorial. *Id.* at 216. Here, Plaintiffs do not and cannot dispute that Defendants are foreign, the

8

supposed misconduct is alleged to have occurred overseas, the challenged statements were all made outside the United States, and Defendants had nothing to do with issuing Plaintiffs' unsponsored ADRs and F shares. *See* Br. 20-21 & n.3-4. Plaintiffs again point to alleged U.S. law violations and local conference call dial-ins provided to investors worldwide, but none of that is remotely sufficient to show that Section 10(b) applies. On similar facts, the Second Circuit has held that application of the statute is impermissibly extraterritorial. *See Parkcentral*, 763 F.3d at 216 (claims concerning "statements made primarily in Germany with respect to stock in a German company traded only on exchanges in Europe" were predominantly foreign); *see also Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 106 (2d Cir. 2019). The result here should be the same.

## III. THE OPPOSITION FAILS TO ESTABLISH THAT DEFENDANTS MADE ANY ACTIONABLE MISSTATEMENT OR OMISSION

The Opposition argues that the Complaint adequately pleads three types of false or misleading statements: (1) statements concerning risk warnings, *see* Opp. 21-26; (2) statements concerning Defendants' commitment to ethics and compliance, *see id.* at 12-17; and (3) statements concerning royalty payments to Gertler, *see id.* at 17-21.[2] Plaintiffs acknowledge that their burden is to specify

---

[2]    Contrary to Plaintiffs' suggestion, Opp. 12, Defendants do not, by moving to dismiss the Complaint on the grounds that its allegations concerning false or misleading statements and scienter fail to clear the PSLRA's high pleading bar, "concede" anything about the other elements of Plaintiffs' Section 10(b) claim.

"with particularity" "the reason or reasons why [each] statement is misleading," *id.* at 12 (citation omitted), but fall far short of establishing any actionably false or misleading statement under that "high-specificity pleading standard," *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490, 495-96 (3d Cir. 2016).[3]

## A.     The Risk-Warning Statements Are Not Actionable

Defendants' opening brief showed that the risk-warning statements in Glencore's annual reports are not actionable because (1) Defendants disclosed the risks of "heightened scrutiny by U.S. and foreign government bodies," and (2) Defendants had no "duty to disclose uncharged, unadjudicated wrongdoing" or "'confess' as soon as a regulatory agency begins an investigation."  Br. 23-29.

The Opposition concedes that "investors were aware that there was a risk that bribery may occur."  Opp. 22.  Plaintiffs also abandon any argument that Glencore failed to disclose regulatory investigations or risks associated with those investigations—both of which, in any event, Glencore disclosed.  *See id.* at 25-26. Instead, the Opposition argues that the risk-warning statements improperly omitted the fact that "there was not just a risk of regulatory conduct, but a substantial likelihood that Glencore would be subject to a litany of violations from foreign

---

[3]     The Opposition acknowledges that Plaintiffs' Section 20(a) claim depends on the existence of "underlying securities fraud violations against Glencore."  Opp. 36.  Because Plaintiffs plead no such underlying violation, the Section 20(a) claim fails.  *See In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 275-76 (3d Cir. 2005).

officials," *id.* at 22, because Glencore was allegedly "violating international bribery and money-laundering laws," *id.* at 26.  This argument fails because Plaintiffs have not pleaded particularized facts supporting the Opposition's bare assertion that Glencore was "actively engaged in bribery."  Opp. 13; *see* Br. 27-29. Plaintiffs' allegations of "investigations into Glencore's compliance with money laundering and bribery laws, as well as the [Foreign Corrupt Practices Act]," Compl. ¶ 5, cannot satisfy their burden to plead unlawful conduct.

The Opposition argues that the Complaint sufficiently alleges that Glencore violated the United Kingdom's "Bribery Act 2010" and the FCPA.  Opp. 9-11. But the Complaint does not even mention the U.K. statute, much less explain how Glencore supposedly violated it.[4]  As for the FCPA, the Complaint contains no well-pleaded allegation that Defendants bribed any "foreign official," as a violation would require.[5]  *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 803 (S.D.N.Y. 2018); *see also* Compl. ¶¶ 81-82 (alleging payments by third parties); ¶¶ 75, 221 (alleging

---

[4]      The Complaint alleges that the U.K.'s "Serious Fraud Office" opened an investigation into Glencore.  Compl. ¶¶ 127-32.  It does not allege that the "Bribery Act 2010" (or any specific statute) was the basis for the investigation, nor any facts uncovered or conclusions reached.

[5]      Although the FCPA criminalizes some conduct beyond "direct dealings," Opp. 11, the Complaint contains no particularized allegations that Glencore made payments "knowing that all or a portion of such [payments] … [would] be offered, given, or promised, directly or indirectly, to [a] foreign official," 15 U.S.C. § 78dd-1(a)(3); *see Rio Tinto*, 332 F. Supp. 3d at 804-05; Br. 28-29.

settlement payment to government entity); ¶¶ 103-107 (alleging no details of any payment).[6] The Complaint contains no allegations explaining how or when the Individual Defendants (or anyone else at Glencore) knew any payment might be directed to a "foreign official." Plaintiffs thus fall far short of pleading an underlying FCPA violation.[7] *See Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *11 (D.N.J. July 27, 2018) (where securities fraud action "rests on the failure to disclose uncharged illegal conduct, the complaint must state a plausible claim that the underlying conduct occurred" (citation omitted)); *In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585-86 (S.D.N.Y. 2006) (dismissing claims based on nondisclosure of scheme not adequately alleged to be unlawful).

---

[6]    The Opposition asserts that "Glencore issued a 'loan' of $45 million to Gertler … used by Gertler to bribe President Kabila," Opp. 4, but that allegation is not in the Complaint, which instead alleges that Gertler used a Glencore loan as security for a loan from hedge fund Och-Ziff Capital Management LP, which Gertler then allegedly used to bribe officials on behalf of the fund, Compl. ¶ 56.

[7]    The detailed pleading in the cases cited by Plaintiffs contrasts starkly with Plaintiffs' own speculative allegations. *See* Opp. 10-11. In *S.E.C. v. Jackson*, the SEC pleaded "ample facts," including a sanction levied by the government of Nigeria, demonstrating that the defendants personally sought authorization for "procurement fees" that they had reason to know would be used for bribery. 908 F. Supp. 2d 834, 853 (S.D. Tex. 2012). And in *In re Faro Technologies Securities Litigation*, plaintiffs pleaded admissions of "improper payments" in annual reports and offered allegations from "well over a dozen confidential witnesses," some of whom confirmed knowledge of the unlawful activity among senior managers. 534 F. Supp. 2d 1248, 1263 (M.D. Fla. 2007).

At bottom, the Opposition's argument is that Glencore should be faulted for failing to "'confess' as soon as a regulatory agency [began] an investigation." *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 582 (S.D.N.Y. 2016); *see* Br. 29.  That is not required under Section 10(b).  Consistent with the securities laws, Glencore timely disclosed the investigations without speculating about whether regulators might find fault.[8]  *See Galati v. Commerce Bancorp, Inc.*, 2005 WL 3797764, at *6 (D.N.J. Nov. 7, 2005) ("[P]redictions of future events such as criminal indictments are too speculative to be material."), *aff'd*, 220 F. App'x 97 (3d Cir. 2007).[9]  And Plaintiffs allege losses resulting from disclosure of the governmental inquiries, not of any underlying violations.  *See Williams v. Globus Med., Inc.*, 869 F.3d 235 (3d Cir. 2017).[10]

---

[8]    The Opposition attempts to distinguish *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516 (W.D. Pa. 2019), and *In re PTC Therapeutics, Inc. Securities Litigation*, 2017 WL 3705801 (D.N.J. Aug. 28, 2017), on the grounds that Glencore was "actively engaged in bribery," Opp. 25 n.6, and that bribery was a "core component of Glencore's day-to-day operations," *id.* at 24.  Neither assertion is supported by any allegations in the Complaint.

[9]    Because the Opposition is unable to rebut Defendants' arguments, it resorts to miscasting the argument in Defendants' opening brief as based on the "bespeaks caution" doctrine or on the PSLRA's "safe harbor."  Opp. 23-24.  Defendants relied on neither of these doctrines or arguments in their opening brief; thus, much of the Opposition's argument as to the challenged risk-warning statements aims at a nonexistent straw man and accordingly can be disregarded.

[10]    Plaintiffs attempt to distinguish *Williams* on the basis that the risks of bribery here had already "materialized." Opp. 25.  But the Complaint does not establish that Glencore was "actively engaged in bribery."  *See id.*  As in *Williams*,

**B.     The Ethics and Compliance Statements Are Not Actionable**

Glencore's statements concerning its commitment to ethics and compliance are not actionable both because they are generic and immaterial puffery, *see* Br. 31-32, and because Plaintiffs have not pleaded any underlying legal violation that Glencore was purportedly required to disclose, *see id.* at 33; *supra* Section III.A.

The Opposition doubles down on the flawed argument that statements about "ethics," "compliance," "transparency," "responsibility," and "commitment to anti-bribery" were "materially false or misleading because Glencore was actively engaged in bribery in the DRC, Venezuela, and Nigeria" and should have "inform[ed] investors that [it was] subject to heightened risks of investigation and penalties due to its conduct."  Opp. 13.  Again, the argument fails because Plaintiffs fail to plead any underlying violation of law.  *See supra* Section III.A.

The Opposition also cannot overcome well-established precedent showing that the challenged statements concerning ethics or compliance are "classic puffery" and therefore inactionable as a matter of law.[11]  *Schiro v. Cemex, S.A.B.*

---

Plaintiffs argue wrongly that Defendants are liable for failing to speculate about future risks that might or might not "come to fruition."  869 F.3d at 242.

[11]     Plaintiffs recite the general rule that materiality often is a "mixed question of law and fact," Opp. 14-15, but ignore the equally well-established rule that materiality is frequently determined at the pleading stage "when the disclosures or omissions are so clearly unimportant that reasonable minds could not differ."  *In re Galena Biopharma, Inc. Sec. Litig.*, 336 F. Supp. 3d 378, 390 (D.N.J. 2018). General corporate optimism and puffery are paradigmatic examples of statements

*de C.V.*, 396 F. Supp. 3d 283, 298 (S.D.N.Y. 2019);[12] *see also, e.g.*, *Rio Tinto*, 332

F. Supp. 3d at 806; *Emps. Ret. Sys. of Providence v. Embraer S.A.*, 2018 WL

1725574, at *8 (S.D.N.Y. Mar. 30, 2018); Br. 31-32 & nn.11-12.

The Opposition's attempt to analogize this case to *In re Petrobras Securities*

*Litigation* fails because courts have hesitated to extend *Petrobras*' holding beyond

the specific context of that case, where the defendants made statements "to parry,

and reassure investors in the face of, growing concerns about corporate

wrongdoing," rather than "in the ordinary course of business," permitting an

inference that the company had "touted its ethics and principles in a defensive

maneuver to fend off inquiries about wrongdoing."  *In re Braskem S.A. Sec. Litig.*,

246 F. Supp. 3d 731, 757 (S.D.N.Y. 2017).[13]

---

that are immaterial on their face as a matter of law.  *See, e.g.*, *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882, at *11 (D.N.J. Dec. 6, 2018).

[12]    The Opposition incorrectly states that "the Court found defendants liable" in *Schiro*.  Opp. 16.  Although the court found certain statements about a pending lawsuit to be actionable as pleaded, *Schiro*, 396 F. Supp. 3d at 296, it found statements concerning ethics and compliance to be inactionable as a matter of law, *see id.* at 297-98, and dismissed the complaint, *id.* at 308.

[13]    The Opposition asserts that "[c]ourts have relied on *Petrobras* as a guide when adjudicating cases involving corruption allegations."  Opp. 14.  However, as evidenced by the only two cases Plaintiffs cite for that proposition, courts have relied on *Petrobras* only in cases involving similarly extreme and well-pleaded allegations.  *See In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 463 (S.D.N.Y. 2017) (discussing "repeated references made specifically in response to damaging media reports about bribery and bid-rigging"); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 660 (S.D.N.Y. 2017) (company "represented to

In contrast to *Petrobras*' "extreme underlying facts," *Veal v. LendingClub Corp.*, 2019 WL 5698072, at *11 (N.D. Cal. Nov. 4, 2019), nearly all of the statements concerning ethics or compliance that are challenged here were made "in the ordinary course of business," *Braskem*, 246 F. Supp. 3d at 757; *see* Compl. ¶¶ 147, 155, 166-67, 232 (annual reports); ¶¶ 179, 237 (sustainability reports).[14] The remaining statements—that Glencore "takes ethics and compliance very seriously," Compl. ¶ 140, and operates "in a responsible, lawful and sustainable manner," *id.* ¶ 212—are a far cry from the "repeated[]" statements in *Petrobras* responding to specific questions about company integrity in the face of public allegations suggesting the contrary.[15] Instead, both statements exemplify the sort

---

investors that Bradesco had adopted an effective anti-corruption policy" but well-pleaded allegations tied company leaders directly to a bribery scheme).

[14]     Plaintiffs also cite two cases involving statements that had an element of puffery but were nonetheless actionable because they also contained specific factual falsehoods or misrepresentations. *See Stichting Pensioenfonds ABP v. Merck & Co.*, 2012 WL 3235783, at *5 (D.N.J. Aug. 1, 2012); *see also Martin v. GNC Holdings, Inc.*, 2017 WL 3974002, at *10 (W.D. Pa. Sept. 8, 2017), *aff'd*, 757 F. App'x 151 (3d Cir. 2018).  The Complaint contains no similar allegations; it alleges only generic statements about Glencore's commitment to compliance.

[15]     Importantly, Mr. Glasenberg's statement that Glencore planned to "operate in a responsible, lawful and sustainable manner" was accompanied by a frank acknowledgment that operating in the DRC involved "risks" that Glencore would need to "assess … carefully."  Compl. ¶ 212.  It was also made on August 8, 2018—more than a month after Glencore disclosed that it had received a DOJ subpoena seeking information about its business activities in the DRC, Venezuela, and Nigeria, and nearly two years after the investigation into Gertler became public.  *See id.* ¶¶ 140, 205.

of boilerplate rhetoric that the Opposition admits was rightfully found inactionable in *Singh v. Cigna Corp.*, 918 F.3d 57 (2d Cir. 2019).[16]  *See* Opp. 15.

### C.   The Statements Concerning Payments to Gertler Are Inactionable

Finally, Defendants' statements about Glencore's review of its contractual obligations to Gertler, and its balancing of legal and regulatory risks against those obligations, are not actionable.  There is no allegation that Defendants did not hold, or lacked a reasonable basis for, the opinions expressed.  *See* Br. 35-36 & n.15. Other Gertler-related statements were simply factual reports that did not give rise to any duty to disclose additional information.   *See id*. at 34-35, 37 n.16.  Nor can the alleged misstatements have been materially misleading where the public already possessed ample information about Gertler, his activities in the DRC, and his relationship with Glencore, *see* Br. 25-26 & n.7, 36, so that the supposed omissions did not alter the "total mix" of information available, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011).

The Opposition argues that Glencore lied when it said it believed it was in compliance with U.S. sanctions, because Glencore allegedly "knew it was not in

---

[16]     The Opposition defeats its own attempted analogy to *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014), noting that the *Meyer* defendant "described its compliance mechanisms in confident detail, including references to 24-hour monitoring teams, specific compliance equipment, and its clean compliance record."  Opp. 15-16.  Plaintiffs, by contrast, rely on generic references to "monitoring of legislative requirements, engagement with government and regulators, and compliance with the terms of permits and licenses."  *Id.* at 16.

compliance." Opp. 18. But the Opposition cites no allegation in the Complaint—because there is none—that Glencore "knew" payments to Gertler were unlawful. Instead, the Complaint alleges that Glencore "believe[d] that payment in non-US dollars of royalties and access premiums to [a Gertler-owned entity] without the involvement of US persons would appropriately address all applicable sanctions obligations," as well as contractual obligations to Gertler. Compl. ¶ 199. The Opposition asserts that "the DOJ did not give approval to the continued payments," Opp. 17, but nothing in the Complaint explains why the DOJ was required to approve in advance such private activity in order to make it lawful.[17]

Plaintiffs' allegations concerning the silence of a Glencore spokesperson concerning sanctions and the issuance of a DOJ subpoena that does not even relate to compliance with U.S. sanctions, *see* Opp. 20, do not establish that the government took "the opposite view," or that Glencore's opinion statements otherwise lacked a good-faith basis.[18] *See Omnicare, Inc. v. Laborers Dist.*

---

[17]   The Opposition's argument concerning "locking" sanctions is nonsensical. Opp. 4. And the *blocking* sanctions imposed by the U.S. apply primarily to U.S. persons. *See* Compl. ¶¶ 3, 34, 166, 186, 235.

[18]   Plaintiffs baldly allege "Glencore had no reasonable basis to believe that it was in compliance with U.S. sanctions," *e.g.*, Compl. ¶ 236, but do not explain why it was unreasonable for Glencore to believe that satisfying contractual obligations "other than in US dollars and without the involvement of US persons" would "appropriately address[] all applicable sanctions regulations," *id.* ¶ 235.

*Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188 (2015).  Although the

Opposition purports to rely on *Omnicare*, it falters by ignoring one of *Omnicare*'s

bedrock principles:  A securities-fraud plaintiff challenging an opinion statement

"must identify particular (and material) facts going to the basis for the issuer's

opinion … whose omission makes the opinion statement at issue misleading."  *Id.*

at 194; *see* Br. 35-36 & n.15.[19]  At most, the Opposition states Plaintiffs'

disagreement with Glencore's business decisions and balancing of risks—not a

viable *Omnicare* claim.  *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d

159, 170 (3d Cir. 2014) (existence of "difference of opinion" does not suffice to

establish actionability of opinion statement).

   The Opposition also argues that "a reasonable investor could read

Defendants' statements as meaning Glencore would cease making payments to

Gertler," Opp. 20, and that Glencore somehow "hid from investors Glencore's on-

going relationship with Gertler," *id.* at 20 n.5.  Nothing in the Complaint

substantiates those assertions, which in any event ignore the content of Glencore's

statements.  Instead, the Complaint demonstrates that Glencore disclosed that it

was considering options for mitigating its risks, and further disclosed its decision

---

[19]   The Opposition's citation to *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S.
1083 (1991), issued years before *Omnicare*, is off-base for the same reasons.  The
Complaint does not demonstrate that Defendants' statements concerning Gertler
lacked a "factual basis that justifie[d] them as accurate."  *Id.* at 1093; *see* Br. 35.

to continue payments to Gertler.  *See* Br. 35-36.  The Complaint further establishes

that the investing public already possessed a wealth of information about Gertler

and his business relationship with Glencore.[20]  *Id. at* 36-37 & n.16.

## IV.   THE OPPOSITION FAILS TO ESTABLISH THAT DEFENDANTS ACTED WITH SCIENTER

No allegations in the Complaint justify an inference of scienter, much less

the "strong inference" of scienter the PSLRA requires.  *See Rahman v. Kid Brands,*

*Inc.*, 736 F.3d 237, 242 (3d Cir. 2013).[21]

---

[20]    Plaintiffs cite *In re Adams Golf, Inc. Securities Litigation,* 381 F.3d 267, 275 (3d Cir. 2004) for the proposition that the materiality of omitted facts cannot be resolved at the pleading stage if "reasonable minds" could differ.  But the omitted fact in that case was a wholesaler's "unauthorized inventory of several thousand … golf clubs"—the economic significance of which could not be assessed without further factual development.  *Id.*; *see In re Merck & Co. Sec., Deriv. & Erisa Litig.*, 2012 WL 3779309, at *3 (D.N.J. Aug. 29, 2012) (materiality of drug's safety risks was not clear at pleading stage).  Here, in contrast, the Complaint does not even make clear what supposed material facts were omitted, and instead simply speculates that Glencore knew all along it was violating sanctions.

[21]    The Opposition's contention that Defendants "d[id] not even attempt to provide a competing theory of scienter," Opp. 35, attempts to flip Plaintiffs' pleading burden on its head.  The PSLRA places the burden on *Plaintiffs* to clear the statute's high pleading bar.  *See Winer Family Tr. v. Queen*, 503 F.3d 319, 326-27 (3d Cir. 2007).  Regardless, Defendants' opening brief *did* repeatedly propose more compelling, and nonculpable, opposing inferences.  *See* Br. 45, 48-49, 50-51.

### A.   The Opposition Does Not Establish the Individual Defendants' Scienter

#### 1.   *The Opposition Does Not Establish Individualized Motive*

As to the Individual Defendants' purported motives to commit fraud, the Complaint alleges only generic motives common to all corporate officers and directors, not "concrete and personal benefit[s] to the individual defendants resulting from [the] fraud."  Br. 47 (quoting *Inst. Invr's Grp. v. Avaya, Inc.*, 564 F.3d 242, 278 (3d Cir. 2009)).  In an effort to identify a more particularized motive, the Opposition argues that the Individual Defendants were motivated to make false and misleading statements to avoid the risk that the DRC might seize Glencore's DRC-based assets.  *See* Opp. 32.  But Plaintiffs do not explain how either Individual Defendant had a personal stake in the alleged risk that Glencore's DRC-based assets might be seized.[22]  *See Avaya*, 564 F.3d at 278.  The cases

---

[22]    The Opposition asserts that Mr. Glasenberg and Mr. Kalmin "decided to make [the royalty] payments after speaking with U.S. and Swiss authorities, but without receiving their approval."  Opp. 32.  Even accepting that assertion, the Individual Defendants' alleged desires to protect Glencore's assets "are 'generalized motives' shared by every 'publicly-owned, for-profit endeavor,' and thus are not sufficiently concrete and individualized for scienter purposes."  Br. 47 (quoting *In re Cendant Corp. Sec. Litig.*, 76 F. Supp. 2d 539, 548 (D.N.J. 1999)).

Plaintiffs cite are inapposite:  most do not discuss individual motives,[23] and those

that do involve well-pleaded allegations that individuals stood to benefit.[24]

>    **2.     The Opposition Does Not Establish Individual Scienter
>            Through a "Core Operations" Inference**

The Opposition also fails to establish the Individual Defendants' scienter

through the "core operations" doctrine, which applies where "a defendant made

misstatements concerning 'core matters' of central importance to a company."

*Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018).  That

doctrine generally applies only if "the operation in question constitute[s] nearly all

of a company's business," *Thomas v. Shiloh Indus., Inc.*, 2017 WL 1102664, at *4

(S.D.N.Y. Mar. 23, 2017), which is not alleged here.  *See* Br. 42-44.

Plaintiffs assert, without support, that the mining contracts and operations

alleged in the Complaint had a "considerable impact … on Glencore's total

---

[23]    *See Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055, 1073 (D. Neb. 2016)
(corporate motive); *Crago v. Charles Schwab & Co.*, 2017 WL 6550507, at *6
(N.D. Cal. Dec. 5, 2017) (same); *Anschutz Corp. v. Merrill Lynch & Co.*, 785 F.
Supp. 2d 799, 817 (N.D. Cal. 2011) (same); *Abu Dhabi Commercial Bank v.
Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 179-80 (S.D.N.Y. 2009) (same).

[24]    *See In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 416 (S.D.N.Y.
2003) (finding motive based on defendant's "unique and substantial" financial
incentives, including allegations that company shares were "crucial underpinning
for his complicated personal finances"); *Roth v. AON Corp.*, 2008 WL 656069, at
*6 (N.D. Ill. Mar. 7, 2008) (recognizing financial motives "insufficient to create a
strong inference of scienter," but finding alleged motivation to conceal contingent
commission revenues to protect client relationships was relevant to scienter).

revenue."  Opp. 28.  But that is not the test, and in any event, Plaintiffs have not

alleged facts sufficient to establish that Glencore's copper and cobalt assets in

DRC constitute nearly all—or even a substantial portion—of Glencore's overall

revenue, or that the metals and minerals segment is the "flagship" of Glencore's

business.  Br. 44.  The cases on which Plaintiffs rely required far more.[25]

### 3.   *The Opposition's Other Circumstantial Allegations Do Not Establish the Individual Defendants' Scienter*

The remaining circumstantial allegations also do not establish scienter.

<u>Departures of Directors</u>.  The Opposition invites an inference that the

Individual Defendants were on notice of wrongdoing because of allegations that

certain Glencore officers resigned as directors of Katanga Mining.  *See* Opp. 29-

31.  But the Opposition simply asserts that these individuals reported to Mr.

Glasenberg and identifies no particularized facts supporting any further inference,

---

[25]   *See In re Navient Corp. Sec. Litig.*, 2019 WL 7288881, at *11 (D.N.J. Dec. 30, 2019) ("[E]ducation-related revenue comprises 82.8% of Navient's total revenue."); *Toronto-Dominion Bank*, 2018 WL 6381882, at *17 (Canadian Retail segment was bank's "flagship business" contributing "over 60%" of bank's earnings, and "95% of [bank's] customer base used branch locations for banking— the very locations where alleged improprieties occurred").  Allegations that "DRC mines are the largest in the world" or that "Katanga Mining supplies 20% of the world's cobalt supply," Opp. 28, do not aid the Court in answering the relevant core-operations question: to what extent the operations at issue are of "central importance" *to Glencore*.  *Martin*, 757 F. App'x at 155.  The other case cited in the Opposition, *PTC*, was not a core operations case at all:  there, the individual defendants "demonstrated personal knowledge" of facts contradicting their public statements.  *PTC*, 2017 WL 3705801, at *17 & n.28.  Here, there is no allegation that Glencore hid the news of any investigation.

such as what these individuals discussed with Mr. Glasenberg, or when.  *See* Br.

49-50; *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004)

(scienter must be pleaded with "essential factual background … who, what, when,

where and how"); *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 596

(D.N.J. 2005) (allegations of subordinate knowledge and defendant's supervisory

role insufficient to plead scienter).  The Opposition draws no connection at all

between Mr. Kalmin and any of the departing directors or officers.

Scienter by Status.  Plaintiffs vaguely argue that "Glencore and Defendants"

had "direct access to the clone server and the PDVSA Commercial and Supply

Department" in Venezuela, *see* Opp. 31-32, but do not explain how any

information on such servers led to any knowledge that the challenged statements

were false or misleading in any respect.[26]  This argument is another attempt to

convert the mere fact of the Individual Defendants' executive roles at Glencore

into an inference that they "must have known" about Glencore's purported

"access" to these resources.  Mere access to certain information does not support

an inference of personal knowledge of that information.  *See City of Dearborn*

*Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th

Cir. 2017) (scienter allegation insufficient when plaintiff failed to allege that

---

[26]     The Complaint alleges only vaguely that "Glencore" had this access, Compl.
¶ 256, and there is no mention of the Individual Defendants or any other
individuals, as the Opposition misleadingly implies.  *See* Opp. 32.

individual defendants "personally accessed the data room, or that the confidential informants personally disclosed" the information to the individual defendants).

      Relationship with Gertler. The Opposition's argument that Glencore's business relationship with Gertler indicates Mr. Glasenberg's knowledge of bribery is based on vague and conclusory allegations. *See* Opp. 28-29 (citing allegations that Gertler managed his relationship with Glencore through Glasenberg and was "a controversial figure in the DRC"); *Rio Tinto*, 332 F. Supp. 3d at 796-97, 814 (scienter not established by defendants' alleged approval of payment to consultant where allegations did not establish that defendants "knew, or should have known, that [consultant] was a foreign official"). The Opposition makes no effort to establish with particularity when, or how, Mr. Glasenberg became aware of (or recklessly disregarded) alleged bribery. *See* Br. 40.[27]

## B. The Opposition Does Not Establish Glencore's Corporate Scienter

      The Complaint also fails to establish Glencore's scienter with circumstantial allegations that fall far short of passing muster under the PSLRA. *See* Br. 45-51; *see also Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004) ("Cobbling together a litany of inadequate allegations does not render those

---

[27] The Opposition's argument that that "the lawsuit against Gertler in 2016, and the reporting of the SFO investigation as early as May 2018" were "red flags," Opp. 33, fails because the Complaint contains no particularized allegation that these events revealed that Glencore's statements were false or misleading.

allegations particularized in accordance with Rule 9(b) or the PSLRA."). Plaintiffs ignore that Glencore's creation of a Board Investigations Committee in July 2018 to oversee Glencore's response to the DOJ subpoena *negates* an inference of "corporate scienter." *See* Br. 48. There is no allegation that this committee, or the Audit Committee, authorized any of the challenged statements. Nor is there any concrete allegation that members of either committee were aware of facts contradicting Glencore's statements. A more compelling inference is that Glencore—through the committees—was actively investigating, gathering more information, and cooperating with government authorities prior to taking appropriate actions and informing the public of any developments. *See* Br. 48-49.

## V.   THE COURT SHOULD DISMISS THE CASE IN FAVOR OF SWITZERLAND ON *FORUM NON CONVENIENS* GROUNDS

Should the Court find that any of Plaintiffs' claims may proceed, it should still dismiss the Complaint under the doctrine of *forum non conveniens*. Plaintiffs' choice of forum in New Jersey warrants little or no deference because, as the Opposition confirms, Plaintiffs and this action lack any connection to New Jersey. And Plaintiffs concede that any such deference can be outweighed where, as here, there is another adequate forum and the balance of conveniences favors dismissal.

### A.   Plaintiffs' Choice of Forum Warrants Little Deference

Plaintiffs' choice of a New Jersey forum to litigate an essentially Swiss controversy merits limited deference. The Opposition does not contest that less

deference is due to a plaintiff's choice of forum where, as here, Plaintiffs sue in a representative capacity. *See* Br. 53; Opp. 52-53. Plaintiffs concede that considerations of convenience—where the parties are located, where evidence is concentrated, and where relevant conduct occurred—determine the deference due. *Id.* Those considerations strongly disfavor litigating here because neither Plaintiffs (who are Florida residents) nor any of the alleged misconduct or challenged statements has any connection to New Jersey.[28]

### B.   Switzerland Is an Adequate Alternative Forum

Plaintiffs do not point to anything about Switzerland that makes it an inadequate forum. *See* Opp. 53-54. Plaintiffs also do not dispute that Defendants all are amenable to service of process in Switzerland or that Swiss courts recognize a civil claim for damages for the subject of Plaintiffs' suit. *See* Br. 55-56. No more is required to establish adequacy. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981); *Tech. Dev. Co. v. Onischenko*, 536 F. Supp. 2d 511, 517 (D.N.J. 2007).[29] Plaintiffs assert that a Swiss court would have to apply U.S.

---

[28]    Unable to show a connection to New Jersey, Plaintiffs focus on purported connections to the United States. But connections to the specific forum state are relevant to the *forum non conveniens* analysis, *see Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 191 (3d Cir. 2008), as demonstrated by the authorities cited by Plaintiffs, *see* Opp. 53 (citing *Skycliff IT, LLC v. N.S. Infotech Ltd.*, 2018 WL 2332219, at *6 (D.N.J. May 23, 2018) (describing connection with New Jersey)).

[29]    Plaintiffs suggest that Swiss courts are inadequate because Defendants "have not shown [that] a judgment against Defendants could be enforced in Switzerland,"

securities laws, Opp. 53, but they do not contend that it would be incapable of doing so.  *See Alcon*, 719 F. Supp. 2d at 274 (foreign court "need not be the best possible court but must simply be capable of litigating the dispute").  Plaintiffs conjecture that U.S. litigants may not be able to "easily participate" in a Swiss action, Opp. 53, but do not dispute that Swiss courts could adjudicate such litigants' claims, *see Borden, Inc. v. Meiji Milk Prod. Co.*, 919 F.2d 822, 829 (2d Cir. 1990) ("[s]ome inconvenience … does not render [a]… forum inadequate").

## C.    Private and Public Factors Compel Dismissal to Switzerland

The balancing of public and private factors also supports dismissal.  *First*, Plaintiffs do not dispute that Defendants and witnesses are overwhelmingly located in Switzerland.  *See* Br. 57.  Similarly, the majority of documentary evidence likely is in Switzerland, where most of Glencore's public statements and disclosures originated.  *Id.*  Plaintiffs argue that records of ADR purchases likely are located in the United States, but acknowledge that such evidence is relevant only to class certification and damages.  *See* Opp. 54-55; *see also Suhail v. Trans-Americainvest (St. Kitts), Ltd.*, 2015 WL 4598809, at *5 (D.N.J. July 29, 2015) (location of

---

Opp. 53, but Defendants' expert declaration establishes that Swiss courts recognize a claim for damages and could exercise jurisdiction over Defendants.  Droese Decl. ¶¶ 9-17; *see Archut v. Ross Univ. Sch. of Veterinary Med.*, 2013 WL 5913675, at *6 (D.N.J. Oct. 31, 2013) (alternate forum adequate where defendants amenable to suit and claims cognizable), *aff'd*, 580 F. App'x 90 (3d Cir. 2014).

damages evidence in New Jersey was "only relevant if liability is proved"); *Lynch v. Hilton Worldwide, Inc.*, 2011 WL 5240730, at *4 (D.N.J. Oct. 31, 2011) (same).

*Second*, Plaintiffs ignore the practical difficulties that will arise if the parties must litigate this dispute in the United States.  Plaintiffs do not appear to disagree with Defendants' expert that (1) evidence located in Switzerland generally must be compelled through letters of request made pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters and (2) Swiss law requires that Swiss courts supervise the gathering of evidence located there and sought for litigation abroad.  *See* Br. 57-58; Droese Decl. ¶¶ 20-21.[30]  The limits on foreign discovery under Swiss law will further complicate and burden litigation here.  *See Alcon*, 719 F. Supp. 2d at 276.

*Third*, the Opposition's assertion that Switzerland has "little to no interest" in this dispute is plainly wrong.  Switzerland has a significant interest in a dispute about a Swiss company's alleged misconduct.  *See* Br. 59; *Windt v. Quest Commc'ns Int'l, Inc.*, 529 F.3d 183, 193 (3d Cir. 2008).  The U.S. interest in enforcing the securities laws "does not prohibit [a court] from dismissing a securities action on the ground of forum non conveniens," particularly where, as

---

[30]    Plaintiffs contend that absent class members would be burdened by litigation in Switzerland, Opp. 55, but such "[u]nadorned … speculation" "carries no weight in the *forum non conveniens* analysis."  *Simon v. Republic of Hungary*, 911 F.3d 1172, 1184 (D.C. Cir. 2018).

here, the suit has substantial factual connections to a foreign forum. *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993).

## VI.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Finally, the Court should dismiss the Complaint with prejudice and deny Plaintiffs' cursory request for leave to amend. *See* Opp. 56 n.13.  Plaintiffs have already amended after having had 18 months since their first complaint to further investigate their claims.  Another amendment would unfairly force Defendants to aim at a "moving target" and permit "an end run around the requirements of the PSLRA." *In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 229 (D.N.J. 2005).  Amendment would also be futile. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (amendment would undermine PSLRA's "underlying policy considerations").  Plaintiffs do not and cannot explain what they would allege to plead an actionable misstatement or omission, much less establish personal jurisdiction, overcome *Morrison*'s bar on extraterritorial application of Section 10(b), or show that New Jersey is the appropriate forum.

## CONCLUSION

For the foregoing reasons, and those stated in Defendants' opening brief, the Court should dismiss the Complaint with prejudice.

Dated: May 14, 2020

Respectfully submitted,


*/s/ Susan M. Leming*
Susan M. Leming
BROWN & CONNERY, LLP
360 Haddon Avenue
Westmont, NJ 08108
(t) 856-854-8900
(f) 856-858-4967
sleming@brownconnery.com

*Attorney for Defendants*

Michael G. Bongiorno
David S. Lesser
Jamie S. Dycus
WILMER CUTLER PICKERING
   HALE AND DORR LLP
250 Greenwich Street
New York, NY 10007
(t) 212-230-8800
(f) 212-230-8888
michael.bongiorno@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendants*