NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENRY CHURCH VI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GLENCORE PLC, *et al.*,<br><br>Defendants. | Civil Action No. 18-11477 (SDW) (CLW)<br><br>**OPINION**<br><br>July 31, 2020 |

**WIGENTON,** District Judge.

Before this Court is Defendants' Glencore PLC ("Glencore"), Ivan Glasenberg ("Glasenberg"), and Steven Kalmin's ("Kalmin") (collectively, "Defendants") Motion to Dismiss Lead Plaintiff Randall Seymour ("Seymour") and Plaintiff Michael Shannon's ("Shannon") (together, "Plaintiffs") Amended Putative Class Action Complaint (D.E. 33 ("Amended Complaint" or "Am. Compl.")) for lack of personal jurisdiction, forum non conveniens, and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (D.E. 43.) This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED.**

I.  **BACKGROUND AND PROCEDURAL HISTORY**

This Court writes exclusively for the parties, who are familiar with the procedural and factual history of this case and will set forth only those facts necessary to this Court's analysis. On January 7, 2020, Plaintiffs filed the Amended Complaint alleging that Defendants—Glencore; Glasenberg, Glencore's Chief Executive Officer; and Kalmin, Glencore's Chief Financial

1

Officer—violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5, which was promulgated thereunder. (Am. Compl. ¶¶ 24–25, 335–45.)

In sum, the Amended Complaint alleges that Glencore, a "natural resource company" that produces and markets over 90 commodities worldwide and "often in developing countries" has common stock that trades on the New York-based over-the-counter ("OTC") market under the ticker symbols "GLCNF" and "GLNCY." [1] (*Id.* ¶¶ 3, 18, 36.) From September 30, 2016 through December 5, 2019, Defendants allegedly made false and/or misleading statements and/or failed to disclose adverse facts relating to briberies Glencore purportedly engaged in with the Democratic Republic of Congo ("DRC"), Venezuela, and Nigeria. (*Id.* ¶¶ 1–7.) After news regarding various countries' investigations into the alleged bribery was published, Glencore's common shares declined in market value, allegedly damaging investors. (*Id.* ¶¶ 6–7, 115–34, 138.)

"On May 18, 2018, Bloomberg reported that the U.K.'s Serious Fraud Office was preparing to open a formal bribery investigation into Glencore." (*Id.* ¶ 189.) That same day, the share price of GLNCY dropped $0.55 per share, and GLCNF dropped $0.32 per share. (*Id.* ¶ 191.) On July 3, 2018, Glencore disclosed that it had received a subpoena from the United States Department of Justice with respect to the company's compliance with the Foreign Corrupt Practices Act and United States money laundering statutes. (*Id.* ¶ 205.) That same day, shares of GLNCY fell $0.86 per share, and GLCNF fell $0.41 per share. (*Id.* ¶ 208.) Plaintiffs contend that they and other

---

[1] Plaintiffs allege that GLNCY is an American Depositary Receipt ("ADR"), which reflects "ownership of shares of GLEN common stock that have been deposited with or are otherwise controlled by a depositary institution in the United States and held for the benefit of the GLNCY purchaser." (Am. Compl. ¶ 19); *see Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 367 (3d Cir. 2002) (explaining ADRs, noting that they may be traded on OTC markets, are subject to the Securities Exchange Act, and may be "established with little or no involvement of the issuer of the underlying security" in the case of unsponsored ADRs or "established with the active participation of the issuer of the underlying security" in the case of sponsored ADRs). Here, Defendants contend—and Plaintiffs do not dispute—that the ADRs at issue were unsponsored, meaning that they were purportedly issued without participation or approval by Glencore. (*Compare* D.E. 43-1 at 3–4, 13, 18, 20, D.E. 43-2 ("Burton Decl.") ¶ 25, *with* D.E. 46.)

class members were damaged as a result of Defendants' wrongful acts and omissions. (*Id.* ¶ 7.)

Glencore is incorporated in Jersey, United Kingdom, and is headquartered in Baar, Switzerland. (*Id.* ¶ 15; Burton Decl. ¶¶ 4–5.) Glencore allegedly operates some offices and is affiliated with operations and/or subsidiaries located in the United States.[2] (Am. Compl. ¶¶ 10, 15.) Glasenberg is a citizen of Switzerland, South Africa, Australia, and Lithuania, and has maintained a primary residence in Switzerland since 1993. (D.E. 43-3 ("Glasenberg Decl.") ¶¶ 2, 4–5.) Kalmin is a citizen of Australia and has maintained a primary residence in Switzerland since 2010. (D.E. 43-4 ("Kalmin Decl.") ¶¶ 2, 4–5.) Plaintiffs allege that they are located "in the United States" and purchased artificially inflated GLCNF/GLNCY shares in the United States, specifically Florida for Lead Plaintiff Seymour. (Am. Compl. ¶¶ 13–14; D.E. 46-8 ("Seymour Decl.") ¶ 3.)

After this Court granted Defendants' request to exceed the maximum page limit under Local Civil Rule 7.2, Defendants filed a joint Motion to Dismiss the Amended Complaint, Plaintiffs filed an opposition,[3] and Defendants submitted their reply. (D.E. 43-1, 46, 50.)

## II.  LEGAL STANDARD

### A.  Forum Non Conveniens

Pursuant to the doctrine of forum non conveniens, a court may refuse to hear a case despite having jurisdiction if doing so would better serve the parties' convenience and would be in the

---

[2] For example, Plaintiffs maintain that at the time they filed the Amended Complaint, Glencore had "offices, operations, or subsidiaries located in Alabama, Arizona, California, Connecticut, Delaware, Georgia, Illinois, Kentucky, Louisiana, Maryland, Michigan, New York, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, and Washington." (*Id.* ¶ 15; *see also* D.E. 46 at 43 (citing D.E. 46-1 ("Apton Decl."), Ex D.)) In their opposition brief, Plaintiffs assert, for the first time, that Glencore operates "one of its NorFalco locations" in Elizabeth, New Jersey. (D.E. 46 at 44 (citing Apton Decl., Ex. D.))

[3] Although Defendants stated that they did not oppose a comparable page extension for Plaintiffs' anticipated opposition (D.E. 41), Plaintiffs submitted a 57-page opposition that is less than double-spaced in violation of Local Civil Rule 7.2(d)—without the Court's permission—which certainly exceeds a length comparable to Defendants' double-spaced submission. (*See* D.E. 46.)

interest of justice. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947). Analysis of a forum non conveniens argument requires consideration of four elements:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable;[] (3) relevant "private interest" factors affecting the convenience of the litigants; and (4) relevant "public interest" factors affecting the convenience of the forum.

*Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (citing *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189–90 (3d Cir. 2008)). Defendants "bear[] the burden of persuasion as to all elements of the forum non conveniens analysis." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir. 1988).

Thus, "[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." *Windt*, 529 F.3d at 189 (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

## B. Jurisdiction

Cases brought in federal court must also satisfy jurisdictional requirements over both the parties (personal jurisdiction) and the claims (subject matter jurisdiction). When, such as here, plaintiffs allege violations of a federal statute that authorizes nationwide service of process, *see* Section 27 of the 1934 Securities Act, 15 U.S.C. § 78aa, the Third Circuit has held that "personal jurisdiction may be assessed on the basis of the defendant's national contacts . . . ." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002). Accordingly, when a court assesses "the sufficiency of a defendant's contacts with the forum, [it] should look at the extent to which the

4

defendant availed himself of the privileges of American law and the extent to which he could reasonably anticipate being involved in litigation in the United States." *Id.* at 370 (internal quotations omitted).

Although a court should dismiss a defendant or action if it can readily determine whether it lacks jurisdiction, "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007). Thus, district courts "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432.

### III. DISCUSSION

#### A. Forum Non-Conveniens

##### i. Deference Due to Plaintiff

Typically, "a plaintiff's choice of forum should rarely be disturbed," *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 241 (1981), however, a federal court "may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp*, 330 U.S. at 507. Greater deference is afforded to plaintiff's choice of forum "when it is motivated by reasons that the law recognizes as valid, and where the parties have a bona fide connection with the United States and the chosen forum." *Steward Int'l Enhanced Index Fund v. Carr*, No. 09-5006, 2010 WL 336276, at *6 (D.N.J. Jan. 22, 2010) (internal quotations omitted). "Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private interests clearly favors an alternate forum." *Windt*, 529 F.3d at 190. Courts should consider where:

(i) the parties are from; (ii) the evidence is concentrated; and (iii) the relevant conduct occurred. *Steward*, 2010 WL 336276, at *6 (citing *Windt*, 529 F.3d at 191 ("Indeed, considerations of local inconvenience may be so strong as to [] dwarf considerations of national convenience.")).

In the present matter, Plaintiffs are purportedly "located in the United States." (Am. Compl. ¶¶ 13–14.) Although a plaintiff's "connection with the particular federal district must be considered," *Steward*, 2010 WL 336276, at *7, there is no indication that Plaintiffs are connected to New Jersey, nor do they proffer any purported relationship.[4] (*See generally* Am. Compl.; D.E. 46 at 52–53 (arguing that Plaintiffs' choice of forum is proper based on connections with the United States and Florida)); *see Windt*, 529 F.3d at 191 ("Although the relationship between the United States and a case generally should be considered, this does not mean that the relationship between the local federal court district and the case should not."); *see also Steward*, 2010 WL 336276, at *7–8 (according little deference to Texas and Washington plaintiffs, finding their "lack of connection to New Jersey significant"). Nor do Plaintiffs allege that Glencore has any offices or subsidiaries in New Jersey.[5] (*See* Am. Compl. ¶ 10; D.E. 46 at 43 (claiming that Glencore has offices/subsidiaries in Pennsylvania, New York, Delaware, Maryland, Virginia, Illinois, Kentucky, Georgia, Texas, Washington, Oregon, and California) (citing Apton Decl., Ex. D.)) Rather, Glencore is headquartered in Baar, Switzerland, and incorporated in Jersey, United Kingdom.

---

[4] In fact, Plaintiffs never contend that they live in New Jersey; rather, they generally allege to reside "in the United States." (Am. Compl. ¶¶ 13–14). Although Plaintiffs' opposition brief states that they both reside in Florida (D.E. 46 at 52), Seymour declared that he was located in Florida *when he purchased* GLCNF shares. (Seymour Decl. ¶ 3.) Neither Seymour nor Shannon allege that they are Florida residents. (*See generally* Am. Compl., D.E. 46, Seymour Decl.)

[5] In their opposition brief, Plaintiffs assert that Glencore has an operation in Elizabeth, New Jersey. (D.E. 46 at 44 (citing Apton Decl., Ex. D.)) However, the Court's review of Plaintiffs' exhibit reflects that this purported location is merely used as a "Rail-to-Truck Transfer Facility" by NorFalco, "a Glencore Company," and therefore provides little, if any, support in Plaintiffs' favor. (*See* Apton Decl., Ex. D); *see also Steward*, 2010 WL 336276, at *7–8 (according little deference to plaintiffs' choice of forum, notwithstanding that the defendant maintained a "business unit" in New Jersey). For example, the same exhibit reflects that NorFalco has at least two office locations in Canada and Connecticut, with no apparent offices in New Jersey. (*See* Apton Decl., Ex. D.)

(Am. Compl. ¶ 15; Burton Decl. ¶¶ 4–5, 27.)

Moreover, the alleged conduct giving rise to Plaintiff's claims purportedly occurred abroad in the DRC, Venezuela, and Nigeria.  (*See generally* Am. Compl.); *see also Archut v. Ross Univ. Sch. of Veterinary Med.*, 2013 WL 5913675, at *7 (D.N.J. Oct. 31, 2013) ("[I]f the operative facts giving rise to the complaint occurred outside of the chosen forum, then deference owed to a plaintiff's choice of forum is reduced.").  Plaintiffs do not refute Defendants' contention that the alleged misstatements/omissions were crafted and approved in Switzerland, where Glencore is headquartered, and that earnings calls were usually conducted from Switzerland or the United Kingdom.[6]  (*Compare* Burton Decl. ¶¶ 26–40, *with* D.E. 46.)  Furthermore, because the Amended Complaint's allegations are centered abroad, there is no indication that New Jersey houses any evidence relevant to this matter.  (*See generally* Am. Compl.; *see also* D.E. 46.)  For example, documentary evidence of the alleged securities fraud is likely contained in Switzerland, and most witnesses appear to reside outside New Jersey.  (*See* Am. Compl.; D.E. 43-1 at 52 (arguing that the "witnesses and documents related to the challenged statements are located in Switzerland"); Burton Decl. ¶¶ 28–40 (same)); *see also Kisano*, 737 F.3d at 877–78 (noting that defendants need not provide specific details on potential witnesses and testimony).

For these reasons, Plaintiff's choice of forum is accorded less deference.[7]  *See Archut*, 2013 WL 5913675, at *7 (declining to award plaintiff's choice of forum full deference, noting that while plaintiff lived in North Carolina and chose to bring the action in the United States, the facts

---

[6] For example, Defendants assert that the August 8, 2018 earnings call cited in the Amended Complaint was conducted from Switzerland.  (Burton Decl. ¶ 38; *see* Am. Compl. ¶ 212.)

[7] Moreover, Plaintiffs appear to concede that Glencore never sponsored the ADRs at issue, which distinguishes this case from *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, No. 2672, 2017 WL 66281 (N.D. Cal. Jan. 4, 2017).  For example, in *In re Volkswagen*, the court accorded deference to out-of-state plaintiffs' choice of forum, reasoning in part that Volkswagen sponsored the ADRs at issue and thus was "directly involved in the [ADRs'] domestic offering." 2017 WL 66281, at *1, 5, 8.

underlying her claims occurred abroad).

### ii. Adequate Alternate Forum

Next, in order for Defendants to show that there is an adequate alternative forum, two conditions must be met: (1) "[D]efendant[s] must be amenable to process in the alternative forum" and (2) "the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide [P]laintiff[s] with appropriate redress." *Fiscus v. Combus Fin. AG*, No. 03-1328, 2006 WL 1722607, at *12 (D.N.J. June 20, 2006) (citing *Piper*, 454 U.S. at 254, n. 22; *Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP., Ltd.*, 860 F. Supp. 1055, 1063 (D.N.J. 1994)). To meet their burden on the second prong, "[c]ourts in this District have recognized that a defendant . . . [may] present[] . . . certifications and affidavits of foreign attorneys or legal experts from the proposed foreign jurisdiction attesting to the fact that the type of relief a plaintiff is seeking is available in that country." *Id.*

Here, Defendants are willing to consent to jurisdiction in Switzerland as it relates to Plaintiffs' claims. (D.E. 43-1 at 55; D.E. 50 at 27.) Additionally, Switzerland's judicial system permits the adjudication of the subject matter of Plaintiffs' securities fraud claims.[8] (*See* D.E. 43-5 ("Droese Decl.") ¶ 7(c) (Swiss-barred attorney and professor of law concluding that the subject matter of Plaintiffs' claims are cognizable in Switzerland with adequate remedies); *see also id.* ¶¶ 22–27); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 252, 256–57 (S.D.N.Y. 2011) (finding Switzerland an adequate forum for "federal securities law" and "substantially identical" common law fraud claims because Switzerland "permit[s] litigation on the subject matter of the dispute and offer[s] remedies for the wrong plaintiff allege[d]"). Moreover, the court need not "conduct[]

---

[8] Plaintiffs did not cite—nor did the Court find—any case to the contrary, *i.e.*, stating that securities claims and remedies are unavailable in Switzerland. (*See* D.E. 46.) Nor do Plaintiffs dispute that Defendants are amenable to service in Switzerland. (*See generally id.*)

8

complex exercises in comparative law" as part of the forum non-conveniens analysis. *Warner Tech. & Inv. Corp. v. Hou*, No. 13-7415, 2014 WL 7409978, at *4 (D.N.J. Dec. 31, 2014) (quoting *Piper*, 454 U.S. at 251) (concluding that China was an adequate alternate forum for plaintiff's claims, including alleged violations of the Securities Exchange Act); *see also Wilmot v. Marriott Hurghada Mgmt., Inc.*, No. 15-618, 2016 WL 3457007, at *1 (D. Del. June 22, 2016), *aff'd*, 712 F. App'x 200 (3d Cir. 2017); *Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 1000 (E.D. Pa. 2003) (noting that differences between foreign and American law did not preclude suit abroad). Thus, Defendants have met their burden by showing that at least one adequate alternate forum exists.[9]

### iii. Private and Public Interest Factors

Lastly, the court must balance the private and public interest factors. The private interest factors include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp.*, 330 U.S. at 508. Under the private interest factors, dismissal is generally favored when a majority of the evidence and witnesses are located in a foreign forum and the alleged misconduct is centered there. *See, e.g.*, *Baez v. Marriott Int'l, Inc.*, No. 18-1894, 2018 WL 3801251, at *3 (D.N.J. Aug. 9, 2018) ("The Third Circuit has repeatedly held that, when the

---

[9] Plaintiffs also argue that Switzerland is not an adequate alternate forum because Defendants failed to establish whether a judgment against them could be enforced in Switzerland. (*See* D.E. 46 at 53.) However, Plaintiffs' contention wholly ignores Defendants' expert declaration—and Plaintiffs do not provide any competing affidavit—which states that Swiss courts can exercise jurisdiction over all Defendants because they are domiciled in Switzerland. (*See* Droese Decl. ¶¶ 13–17); *see Royal Gist-Brocades N.V. v. Sierra Prod. Ltd.*, No. 97-1147, 1997 WL 792905, at *5 (E.D. Pa. Dec. 22, 1997) (commenting, in the context of a personal jurisdiction analysis, that "[i]t would certainly be easier for a court [in British Columbia] to enforce . . . [a] judgment against citizens of that province").

9

overwhelming majority of witnesses and evidence reside in a foreign forum, dismissal on the grounds of forum non conveniens is appropriate.") (citing *Kisano*, 737 F.3d at 878).

Here, the relevant documentary evidence and other potential witnesses are likely located outside the United States, which may burden Defendants with additional costs and implicate compulsory process for unwilling witnesses.[10]  (*See generally* Burton Decl.; Glasenberg Decl. ¶¶ 2, 4–5 (attesting to citizenship and residency in Switzerland); Kalmin Decl. ¶¶ 2, 4–5 (attesting to citizenship in Australia and residency in Switzerland)); *see also Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 388 (S.D.N.Y. 2009) (stating that while "the costs of transporting documents are not as prohibitive as they once were," when "the majority of relevant evidence is located abroad, the burden imposed on the parties is still significant and favors dismissal").  Indeed, other than Plaintiffs' location in the United States, and their purchase of Glencore securities on an OTC market from within the United States, Plaintiffs do not dispute that the witnesses or evidence relevant to their claims are located abroad.  (*See generally* D.E. 46); *see also Brunswick GmbH v. Bowling Switzerland, Inc.*, No. 07-471, 2008 WL 2795936, at *4 (D. Del. July 18, 2008) ("Plaintiff has presented no evidence rebutting [d]efendant's contention that all of the pertinent documents and witnesses are located in Switzerland . . . .").  Plaintiffs also do not dispute that the "fraud [they] complain[] of occurred, if anywhere, in [Switzerland]" and elsewhere abroad.  *See Warner*, 2014 WL 7409978, at *8; (*compare* Burton Decl. ¶¶ 34–40, *with* D.E. 46);

---

[10] Nor do Plaintiffs contest that discovery of evidence located abroad will likely be subject to processes under the Hague Convention.  (*Compare* D.E. 43-1 at 57–58, D.E. 50 at 29, and Droese Decl. ¶¶ 20–21, *with* D.E. 46); *see Crosstown Songs U.K. Ltd. v. Spirit Music Grp., Inc.*, 513 F. Supp. 2d 13, 17 (S.D.N.Y. 2007) (noting that defendant would "have to engage in the time-consuming and expensive process of obtaining essential documentary evidence and witness testimony under the Hague Convention" if the suit was not dismissed); *see also Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 728 (S.D.N.Y. 2011) (commenting that plaintiffs failed to account for the costs associated with discovery in Switzerland such as foreign privacy law compliance); *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 276 (S.D.N.Y. 2010) (noting that because defendants were based and incorporated in Switzerland, the burden of obtaining evidence "would likely be substantially reduced in Switzerland").

*see also Howe v. Goldcorp Investments, Ltd.*, 946 F.2d 944, 951 (1st Cir. 1991) (dismissing on forum non conveniens grounds where "the relevant actions, statements and omissions that underlie the plaintiff's claims of 'misrepresentation' or 'fraud' originated in Canada" and "[m]ost of the background facts that might show those statements or omissions to be materially false or misleading occurred in Canada"). For these reasons, all practical considerations "that make trial of a case easy, expeditious and inexpensive," *Gulf Oil Corp.*, 330 U.S. at 508, weigh in favor of dismissal.[11] Thus, the private interest factors weigh against litigating this matter in New Jersey.

Similarly, the public interest factors weigh in favor of dismissal. The public interest factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper*, 454 U.S. at 241 n.6 (citing *Gulf Oil Corp.*, 330 U.S. at 508–09). "In evaluating the public interest factors[,] the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum." *Lacey*, 862 F.2d at 48 (internal quotations omitted).

Here, as noted above, there is no apparent connection to New Jersey. (*See* Am. Compl.; D.E. 46); *see also Steward*, 2010 WL 336276, at *10 (finding it "especially significant that neither of the named plaintiffs [were] from New Jersey"). Rather, the center of Defendants' purported

---

[11] Notably, Plaintiffs do not cite any case to support the contention that it would be difficult for potential U.S.-based class members to litigate in Switzerland. (*See* D.E. 46 at 53, 55.) For example, Plaintiffs do not argue that Switzerland fails to provide a procedural class action mechanism or that it is more difficult to meet class action requirements under Swiss law. (*See generally id.*) Moreover, evidence pertaining to purchases of OTC market shares that might be located in the United States is, as Plaintiffs concede, likely relevant to the issue of class certification and damages, not securities fraud liability. (*See* D.E. 46 at 54–55.)

11

securities violations appears to have occurred abroad in Switzerland, where the alleged misstatements/omissions were drafted and approved.  (*See* Burton Decl. ¶¶ 26–40); *see also Knopick v. UBS AG*, 137 F. Supp. 3d 728, 737 (M.D. Pa. 2015) (weighing public interest factors in favor of defendants, notwithstanding various forum selection clauses pointing to Switzerland, where Switzerland had "an equally strong interest in policing the foreign activities of its native [] institutions" and a "great majority of the events that predicate[d] [p]laintiff's claims occurred in Switzerland" rather than the forum state).  Accordingly, because "the locus of this dispute lies in Switzerland, it would be unfair to burden [New Jersey] citizens with jury duty in this matter."  *See Brunswick GmbH*, 2008 WL 2795936, at *4; *Suhail v. Trans-Americainvest (St.Kitts), Ltd.*, No. 14-7386, 2015 WL 4598809, at *6 (D.N.J. July 29, 2015) (stating that "litigation . . . in New Jersey would increase court congestion and present unnecessary administrative difficulties, since the operative facts giving rise to the action occurred outside of New Jersey"); *Warner*, 2014 WL 7409978, at *8 (noting no local interest in deciding securities claims in New Jersey where the alleged acts and omissions "occurred largely in China").  Moreover, given that this district has one of the largest total number of filings recorded in the country, the administrative difficulty stemming from court congestion also weighs in favor of dismissal.  *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (March 31, 2020), https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2020/03/31-1 (noting 20,340 filings in the District of New Jersey).

Finally, the Court need not "concern itself with the application or choice of the substantive law a court in [Switzerland] may apply."  *Warner*, 2014 WL 7409978, at *7.  Thus while litigating abroad "may prevent plaintiffs from availing themselves of some benefits of United States securities laws," *id.*, dismissal on forum non conveniens grounds "is not trumped simply because

12

the foreign forum will apply different substantive law than an American court." *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609–10 (2d Cir. 1998).

For the reasons stated above, the Court finds that the private and public interest factors weigh in favor of dismissal on forum non conveniens grounds. Accordingly, dismissal of this action is appropriate. *See Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) (stating that there is no prohibition on "dismissing a securities action on the ground of forum non conveniens" in favor of a foreign forum) (citing *Howe*, 946 F.2d at 945, 950).

### B. Jurisdiction

Finally, because this Court concludes, in exercising its discretion, that dismissal is appropriate on the ground of forum non conveniens, it need not reach the merits of Defendants' arguments under Rules 12(b)(2) and 12(b)(6).[12] *See Sinochem*, 549 U.S. at 436 (recognizing that courts have the discretion to defer deciding issues relating to personal and subject matter jurisdiction when dismissing case under forum non-conveniens grounds); *Chigurupati v. Daiichi Sankyo Co.*, 480 F. App'x 672, 674 n.3 (3d Cir. 2012); *Francois ex rel. Estate of Francois v. Hartford Holding Co.*, 424 F. App'x 138, 140 (3d Cir. 2011) (upholding dismissal on forum non conveniens grounds where the district court declined to decide whether it had jurisdiction over the action "particularly given the lack of connection between plaintiffs' claims and the United States"); *see also Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 277 (3d Cir. 2016).

---

[12] Furthermore, the issue of personal jurisdiction is not entirely clear where, as here, Plaintiffs purchased ADRs or foreign shares listed on an OTC market. *See Baez*, 2018 WL 3801251, at *5 n.2 (stating that while it need not consider personal jurisdiction because it dismissed the case on forum non conveniens grounds, it was "not clear that the Court would have personal jurisdiction over [d]efendants"); *see also S.E.C. v. Straub*, 921 F. Supp. 2d 244, 256–57 (S.D.N.Y. 2013) (finding sufficient minimum contacts with the United States where individual defendants were "engaged in a cover-up through their statements to [the company's] auditors *knowing* that the company traded ADRs on an American exchange, and that prospective purchasers would likely be influenced by any false financial statements and filings") (emphasis added).

13

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. An appropriate order follows.

___/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:     Clerk
cc:       Cathy L. Waldor, U.S.M.J.
           Parties